UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF TEXAS LAREDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| V. § | CASE NUMBER 5:22-CR-1439 |
| § | |
| MARSHALL STEVE MERRIMAN § | |

### DEFENDANT'S MOTION TO DISMISS INDICTMENT

COMES NOW, Defendant Marshall Merriman, by and through counsel of record and hereby requests this Court to dismiss the indictment because the statute under which he is charged is unconstitutional. First, he is indicted under a statute that violates the Second Amendment to the Constitution because it burdens the conduct protected by that right and because it is not consistent with the history and tradition of firearm regulation in the United States, as required by *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022). Second, the statute exceeds Congress's powers under the Commerce Clause of the federal constitution.

### I.   BACKGROUND

The indictment charges Mr. Merriman with knowingly possessing a firearm, a Sig Sauer model P224, .357 caliber handgun, that had been shipped and transported in interstate commerce, from which the manufacturer's serial number had been removed, altered and obliterated, in violation of Title 18, United States Code, Sections 922 (k) and 924 (a)(1)(B).

Title 18 U.S.C. 922(k) states:

> It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or

>altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

>In light of *Bruen*, a federal district judge recently dismissed an indictment under 18 U.S.C.

§ 922(k), which criminalizes possession of firearms having serial number infirmities, after concluding the statute to be unconstitutional. *United States v. Price*, 2:22-CR-00097, 2022 WL 6968457, at , at *2–7 (S.D. W. Va. Oct. 12, 2022). The judge in *Price* first concluded that Section 922(k) prohibits conduct that is protected by the plain text of the Second Amendment. *Id.* at *2–3. When the government was unable to meet its burden of proving that Section 922(k) is "consistent with the Nation's historical tradition of firearm regulation," *Id.* at *4–7, the *Price* court concluded that the Section 922(k) could not withstand the *Bruen* test and was, therefore, unconstitutional. *Id.* at 7. Defendant respectfully requests for this Court to make the same finding.

Defendant asserts that statutes criminalizing a person's conduct relating to firearms having serial number infirmities are unconstitutional because they prohibit conduct that is protected by the Second Amendment and the government cannot show that any of these statutes are "consistent with the Nation's historical tradition of firearm regulation." In *United States v. Holder*, 3:21-CR-048-B; 2002 WL 16701935 (N.D. Texas, Nov. 33. 2022), District Court Judge Jane J. Boyle held the contrary. The Court found that the § 922(k) did not infringe an individual's right to possess a firearm and that the government provided historical regulations which were sufficiently analogous to § 922(k) to pass Constitutional muster under *Bruen*. *Id*. at 7.

##   II.   LEGAL STANDARD FOR MOTION TO DISMISS INDICTMENT

Federal Rule of Criminal Procedure 12(b)(1) allows a defendant to "raise by pretrial

motion any defense, objection, or request that the court can determine without a trial on the merits." In deciding the motion, the Court should "take the allegations of the indictment as true." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (quoting *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)). The balance of this motion thus assumes that the Government will prove, beyond a reasonable doubt, the facts alleged in the indictment.

### III. ANALYSIS

**A. The indictment invokes a statute that violates the Second Amendment.**

The Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), provides the framework for analyzing the constitutionality of § 922(k). As the judge in *Price* recognizes, *Bruen* also dooms any government attempt to defend the statute. It is unconstitutional.

Before *Bruen*, courts often rejected constitutional challenges to federal firearms prohibitions. But *Bruen* expressly rejected the two most commonplace tools that appellate courts used to uphold these laws: (1) the two-step analytical framework; and (2) any form of means-ends scrutiny, especially intermediate scrutiny. 142 S. Ct. at 2128–30. The Fifth Circuit had adopted both tools in *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives* ("*NRA*"), 700 F.3d 185, 195–96 (5th Cir. 2012). That two-step framework led the Fifth Circuit (and by extension, district courts within this circuit) to quell most, if not all, challenges to firearms restrictions. *See, e.g., United States v. McGinnis*, 956 F.3d 747, 757–59 (5th Cir. 2020) (rejecting a constitutional challenge to 18 U.S.C. § 922(g)(8), possession of firearm while under a domestic-violence restraining order); *see also United States v. Reese*, 627 F.3d 792,

801-05 (10th Cir. 2010) (same); *Bruen*, 142 S. Ct. at 2131 (noting that courts applying the two-step framework "often defer to the determinations of legislatures").

Now, under *Bruen*, the validity of firearm restrictions turns entirely on text and history:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2126. This model requires courts to take only one step. The inquiry is simple: does "the plain text of the Second Amendment cover an individual's conduct?" If so, "the Constitution presumptively protects that conduct." *Id.* According to the Supreme Court, if the individual is among "'the people' whom the Second Amendment protects," and wishes "to keep and bear arms" in the home or in public "in case of confrontation," then the answer is yes, the plain text of the "unqualified command" protects that activity. *Bruen*, 142 S. Ct. at 2134–35. Because § 922(k) burdens the right of American citizens to keep firearms at home—or bearing firearms in public—for self-defense, it is up to the government to rebut the presumption of the individual's right to do so by pointing to an exception with historical provenance. *Id*. at 2129–30.

The Defense asserts that the indictment invokes a statute that burdens conduct protected by the plain text of the Second Amendment and that it is unconstitutional. The Government cannot rebut that presumption.

### 1. The indictment invokes a statute that is presumptively unconstitutional.

"[W]hen the Second Amendment's plain text covers an individual's conduct, the

Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. The Second Amendment provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const., amend. II.

There can be no doubt that the indictment invokes a statute that prohibits conduct protected by the Second Amendment's "operative clause." The Second Amendment protects citizens' right "to possess and carry weapons in case of confrontation." *See Bruen*, 142 S. Ct. at 2134 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)). Title 18 U.S.C. § 922(k) prohibits *receiving* or possessing a firearm. Because the vast majority of people who keep firearms first "received" them from someone else, whether a firearms dealer, a private seller, or a friend, family member, or acquaintance who gave or sent a gun to the recipient, "receiving" a firearm is protected conduct. *See United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 WL 4352482, at *3 (W.D. Tex. Sept. 19, 2022).[1]

---

[1] It is the Defense's understanding that the statutory term "receive" might not reach *every* act of taking possession of a firearm. For example, one would not normally say that a person who *found* a gun and took possession of it had therefore *received* a gun. The normal meaning of "receive" implies either that someone else sent the firearm or that someone else gave the firearm to the recipient. *Quiroz* embraced a broader reading of the statutory term, and the Government may do so here as well. But that distinction doesn't matter for purposes of the Second Amendment analysis. Either 922(k) prohibits *most* acts of taking possession of a firearm, or it prohibits *all* acts of taking possession of a firearm. Either way, it prohibits conduct protected by the plain text of the Second Amendment.

The statute also burdens the rights of "the people." The Second Amendment, along with the First, Second, Fourth, Ninth, and Tenth Amendments, refers to "the people." Within the Constitution, "the people" is a "term of art"—wherever it occurs, "the term unambiguously refers to all members of the political community, *not an unspecified subset*." *Heller*, 554 U.S. at 580–81 (emphasis added); accord *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990) (The term "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."). The Second Amendment right—no less than the others mentioned above—"belongs to all Americans." *Heller*, 554 U.S. at 581.

Because Title 18 U.S.C. § 922(k) prohibits conduct protected by the plain text of the Second Amendment, it is presumptively unconstitutional.

### 2. The Government cannot rebut the presumption of unconstitutionality because Title 18 U.S.C. § 922(k) is a recent invention without any historical analog.

The conduct prohibited by § 922(k) is covered by the plain text of the Second Amendment, so the statute is presumptively unconstitutional. The Government bears a heavy burden in this case. It "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127.

This is the Government's burden, and Mr. Merriman cannot say what (if any) historical laws it will rely on. But the judge in *Price* engaged in a very detailed historical analysis of the laws of firearm serial number registration while rejecting the Government's effort to defend Section 922(k). *Price*, 2022 WL 6968457, at *2–7.

B. **Section 922(k) exceeds Congress's powers under the Commerce Clause.**

Even if the Second Amendment (combined with the Fourteenth Amendment) would allow some state or local governments to enact a prohibition like § 922(k), the receipt aspect of the of the statute—as commonly construed—is outside of Congress's enumerated powers:

> It shall be unlawful for any person knowingly to transport, ship, or *receive*, *in interstate or foreign commerce*, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or *receive* any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported *in interstate or foreign commerce*.

(emphasis added). The conclusion that this language prohibits even *noncommercial* receipt, long after the weapon has crossed a state or international boundary results in the statute,[2] exceeding Congress's powers under the commerce clause.

Unlike the states, Congress does not have a general police power. "The Constitution creates a Federal Government of enumerated powers." *United States v. Lopez*, 514 U.S. 549, 552 (1995) (citing U.S. Const., Art. I, § 8, and James Madison, *The Federalist* No. 45, pp. 292–293 (C. Rossiter ed. 1961)). The only enumerated power that might justify laws like § 922(n) is the

---

[2] Mr. Merriman does not state that this is the correct understanding of the statutory language. For several reasons, including constitutional avoidance, the Court should construe this language to reach only those acts of *receipt* that are *commercial* in nature; the Court should also require a closer connection to international or interstate commerce. As explained below, however, federal courts often construe this language in this statute and other federal gun laws as follows: it prohibits both commercial and noncommercial receipt, and the only nexus to commerce that need be shown is that the item traveled across an international or state boundary at some point in the past, no matter how long ago. Without waiving the argument for a more limited construction, this motion to dismiss presumes that the statute will be construed in the currently prevailing manner.

Commerce Clause: "Congress shall have power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes . . ." U.S. Const., Art. I, § 8.

The Supreme Court has "identified three broad categories of activity that Congress may regulate under its commerce power":

> 1. "Congress may regulate the use of the channels of interstate commerce."
>
> 2. "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities."
>
> 3. "Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, . . . i.e., those activities that substantially affect interstate commerce."

*Lopez*, 514 U.S. at 558–59 (citations omitted). The common construction of § 922(n) and similar laws reaches a broad swath of non-commercial activity that has no connection at all to any of these authorized areas of regulation.

Based on defense counsel's search so far, there does not appear to be any Supreme Court or published Fifth Circuit decision foreclosing this constitutional argument. Defendant will concede that there is adverse authority regarding other firearm laws. There is also unpublished authority from the Fifth Circuit rejecting this claim or similar claims, though in most of those cases the defense conceded that the issue was foreclosed. A sampling of those adverse decisions is provided below.

1.  *United States v. Bass*, 404 U.S. 336 (1971), is a statutory interpretation case about an abrogated statute:

> 'Any person who—
>
> *(1)* has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . *and who receives, possesses, or*

> *transports in commerce or affecting commerce . . . any firearm* shall be fined not more than $10,000 or imprisoned for not more than two years, or both.'

*Bass*, 404 U.S. at 337 (emphasis added) (quoting Section 1201(a) of Title VII of the Gun Control Act of 1968, Pub. L. 90-351, 82 Stat. 236). The Court held that the statutory language "in commerce or affecting commerce" applied to the crimes of receipt and possession, not just to transportation. The court then went on to muse—in dicta— that the crime of "'receiv(ing) . . . in commerce or affecting commerce,'" could be proven if the evidence "demonstrates that the firearm received has previously traveled in interstate commerce." 404 U.S. at 350.

2. Six years later, the Supreme Court recognized that the holding of *Bass* was limited to the nexus element applying to receipt and possession; the "suggestions" of ways to satisfy the element were "unnecessary" to the decision. *Scarborough v. United States*, 431 U.S. 563, 568 (1977). But *Scarborough* affirmed a conviction under that theory, rejecting the defendant's suggestion that it is "not enough that the Government merely show that the firearms at some time had travelled in interstate commerce." *Id.* at 566. As a matter of statutory interpretation, the Court held that "Congress intended no more than a minimal nexus requirement." *Scarborough*, 431 U.S. at 577.

3. In the first precedential decision to consider the felon-in-possession crime after *Lopez*, the Fifth Circuit held that *Scarborough*'s statutotry interpretation holding also foreclosed the constitutional challenge to that theory:

> As we noted on direct appeal, an ATF weapons expert testified at Rawls' trial that the revolver he possessed was manufactured in Massachusetts, so that the revolver's presence in Texas had to result from transport in interstate commerce. This evidence is sufficient to establish a past connection between the firearm and interstate commerce.

*United States v. Rawls*, 85 F.3d 240, 243 (5th Cir. 1996). As of the date this motion is filed, there is a pending petition for rehearing en banc challenging this aspect of *Rawls*. *See* Pet. for Reh'g En Banc, *United States v. Seekins*, No. 21-10556 (5th Cir.)

  4. Subsequent Fifth Circuit decisions have continued to affirm this reading of § 922(g)'s "in or affecting commerce" language against statutory and constitutional challenges.

  5. In unpublished decisions, the Fifth Circuit has held that these decisions in the context of § 922(g) would control a Commerce Clause constitutional challenge to § 922(n). *See United States v. Johnson*, 250 F.3d 739 (Table), 2001 WL 274184 (5th Cir. 2001); *United States v. Waldman*, No. 21-10637, 2021 WL 6101365, at *1 (5th Cir. Dec. 21, 2021), *cert. denied*, 142 S. Ct. 2662 (2022).

  6. This understanding of the Commerce Clause—that Congress has the power to regulate the possession or non-commercial receipt of any item that ever traveled in interstate commerce—is inconsistent with opinions of the Chief Justice and the four dissenting justices in *Nat'l Fed'n of Indep. Bus. v. Sebelius (NFIB)*, 567 U.S. 519, 558 (Roberts, C.J.) & 649 (Scalia, Kennedy, Thomas, Alito, JJ., dissenting) (2012). Thus far, the Fifth Circuit has rejected the suggestion that *NFIB* overruled the consensus view of § 922(g). *See United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013).

  While the Fifth Circuit has previously rejected this Commerce Clause argument, Mr. Merriman makes this constitutional argument to preserve the record for further review.

### IV. CERTIFICATE OF CONFERENCE

  Counsel conferred with Assistant United States Attorney Gerard Cantu and he is opposed to the filing of this motion.

## V.    CONCLUSION

For these reasons, Mr. Merriman asks this Court to dismiss the indictment.

Respectfully submitted,

MARJORIE A. MEYERS
Federal Public Defender
Southern District of Texas
Texas State Bar Number 14003750
Southern District of Texas No. 3233

By: /s/ CARLOS M. ALANIZ
CARLOS M. ALANIZ
Assistant Federal Public Defender
Texas State Bar No.  24009081
Southern District of Texas No. 27460
1202 Houston St.
Laredo, Texas  78040
Telephone:  956/753-5313
Fax:   956/753-5317

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2022, I electronically filed the foregoing document using the ECF system of the United States District Court, Southern District of Texas and I emailed

/s/ Carlos M. Alaniz
Carlos M. Alaniz
Assistant Federal Public Defender