Ed1UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF
TEXAS
LAREDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| V.     § | CRIMINAL NO. 5:22-1439 |
| § | |
| MARSHALL STEVE MERRIMAN § | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

Defendant Marshall Steve Merriman was charged in an Indictment returned on November 15, 2022, with one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). Merriman has moved to dismiss the Indictment, arguing that the statute is unconstitutional based on the Supreme Court's recent decision in *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S.Ct. 2111 (2022).

Merriman's challenge should be rejected. First, § 922(k) is facially consistent with the Second Amendment under *Bruen*. Supreme Court precedent does not cast doubt on laws imposing conditions and qualifications on the commercial sale of arms, including a prohibition of the obliteration of serial numbers. Even if the statute did regulate protected conduct, the statute would still be constitutional because it is consistent with the nation's historical tradition of firearms regulation. Second, as conceded by Merriman, his Commerce Clause argument is foreclosed by binding Fifth Circuit precedents. Consequently, his motion to dismiss should be denied.

**I.  THE SECOND AMENDMENT, *BRUEN*, AND *HELLER***

The Second Amendment to the Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be

infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2 008), the Supreme Court recognized that the Second and Fourteenth Amendments protect the right of law-abiding, responsible citizens to possess a handgun in the home for lawful purposes, like self-defense. *Id.* at 635.

*Heller* emphasized that "the right secured by the Second Amendment is not unlimited." *Id.* at 626. The Second Amendment "is neither a regulatory straitjacket nor a regulatory blank check." *Bruen*, 142 S. Ct. at 2133. It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* *Heller* made clear that the opinion should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626–27; *see also McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010). *Heller* described these regulations as "presumptively lawful" measures. 554 U.S. at 627 n.26.

*Bruen* did not overturn *Heller;* instead, the Court "made the constitutional standard endorsed in *Heller* more explicit." 142 S.Ct. at 2134. It elaborated on the test *Heller* set forth in determining whether firearm laws are constitutional, by "assess[ing] whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. To make this assessment, a court must engage in a two-prong analysis.

First, the court must determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2126. If it does not, the analysis ends, and the government's regulation is valid. If the conduct at issue is covered by the Amendment's text, however, the government must "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm

regulation." *Id.* at 2129–30. Only if a firearm regulation is consistent with historical traditional "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2130.

In conducting this historical analysis, the government may demonstrate historical acceptance of a regulation by "analogy" to a similar regulation that existed in the Founding Era. *Id.* at 2132. In this way, the test in *Bruen* only requires a showing of a historical example that is "relevantly similar" to the current regulation; the government only has to provide evidence of a "representative historical *analogue*, not a historical *twin*." *Id.* at 2133.

Applying that standard, the Court held unconstitutional a New York licensing law that allowed an applicant to obtain a license to carry a gun outside his home only upon proving "proper cause exists." *Id.* at 2123. First, the Court held the Second Amendment's plain text covered the conduct at issue. *Id.* at 2134–35. In so deciding, the Court emphasized that the petitioners were "ordinary, law-abiding, adult citizens" who sought to carry handguns publicly for self-defense. *Id.* at 2134. This, the Court concluded, fell within "the right to keep and bear arms." *Id.*

The Court then surveyed historical data from "medieval to early modern England" through "the late-19th and early-20th centuries" to determine whether the licensing law squared with historical tradition. *Id.* at 2135–56. After a "long journey through the Anglo-American history of public carry, [the Court] conclude[d] that respondents ha[d] not met their burden to identify an American tradition justifying the State's proper-cause requirement." *Id.* at 2156. "Apart from a few late-19th-century outlier jurisdictions," the Court summarized, "American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense" or required a showing of special need for public carry. *Id.*

*Bruen* rejected the means-end scrutiny framework most courts had relied upon to assess

the constitutionality of gun regulations. *Id.* at 2127. *Bruen* did not consider – much less invalidate – the federal possession of a firearm with an obliterated serial number statute, 18 U.S.C. § 922(k). Nor did it entirely abrogate the Fifth Circuit's post-*Heller* Second Amendment precedent.

## II. SERIAL NUMBER REGULATIONS REMAIN CONSTITUTIONAL AFTER *BRUEN*

Section 922(k) prohibits "any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(k). Those who violate the statute face up to five years in prison. 18 U.S.C. § 924(a)(B). Section 922(k) reflects the commonsense understanding that intact serial numbers are a crucial component of investigating gun crimes and regulating commercial gun sales.

### A. The serial number requirement does not "infringe" on the right to "keep and bear arms."

Section 922(k) remains constitutional even after *Bruen*. As the Court held, the Second Amendment protects the right to keep and bear arms that are "in common use today for lawful purposes like self-defense," *see Bruen*, 142 D. St. at 2134, not those that are "dangerous and unusual" or that are not commonly used for lawful purposes. Id. at 2128. At a bare minimum, guns with obliterated serial numbers are dangerous, unusual, and not commonly used by law-abiding ciizens for self-defense, which places them outside the historical scope of the Second Amendment.

Moreover, while the Second Amendment is designed to protect the people's ability to "keep and bear arms," the statute at issue here requiring a serial number creates no imposition on these rights. As the Supreme Court made clear, to "keep" means to "'[t]o retain; not to lose,' and '[t]o have in custody' and to 'have.'" *Heller*, 554 U.S. at 582 (citation omitted). "At the time of the founding, as now, to 'bear' meant to 'carry.'" *Heller*, 554 U.S. at 584. Whether a serial number is on a gun or not has nothing to do with the retention or carrying of the gun. So, the term "keep" is surely not implicated here, nor is the term "bear arms" at issue. Hence, the regulation in Section 922(k) does not implicate the Second Amendment's text at all.

This finding is supported by the Third Circuit's decision in *United States v. Marzzarela*, 614 F.3d 85 (3d Cir. 2010). *In that case, the court noted that* "unmarked firearms are functionally no different from marked firearms." *Id.* at 94. In this way, the mere requirement that a firearm have a serial number does not impose any burden on one's ability to "keep and bear Arms." Therefore, the lack of any infringement on the core Second Amendment right further places this statute outside the text of what the Second Amendment covers.

### B. Only One United States District Court Has Found Section 922(k) Unconstitutional Based on *Bruen*, and That Case is Wrongly Decided

Merriman submits that Section 922(k) is unconstitutional under *Bruen*. *Defendant's Motion to Dismiss at 3*. In support, he relies on a recent district court case, *United States v. Price*, 2022 WL 6968457 (S.D.W.V. Oct. 12, 2022). *Price*, however, is not precedential and it is wrongly decided.

In *Price*, the district court held that Section 922(k) is unconstitutional post-*Bruen*. First, conjuring a scenario in which two violators (a "law-abiding citizen" and his "law-abiding daughter") intend to do no harm with a gun with an obliterated serial number, the court cursorily concluded that the law infringes on the people's Second Amendment right to keep and bear arms.

*Id*. at *3 ("The conduct prohibited by Section 922(k) falls squarely within the Second Amendment's plain text."). Next, the court concluded that the government failed to overcome presumptive unconstitutionality by showing that a serial numbering regulation, or an analogous requirement, existed in 1791. *See id*. at **4-6. *Price* is wrong on both prongs.

First, *Price*'s "law-abiding citizens" example misconstrued the breadth of the protections of the Second Amendment. While Section 922(k) may restrict one manner in which individuals may keep and carry firearms, this restriction does not infringe on an individual's right to bear arms for self-defense. *See Heller*, 554 U.S. at 626 (soundly rejecting the argument that the Second Amerndment guarantees a right to keep and carry "any weapon whatsoever in any manner whatsoever"); *Marzzarella*, 614 F.3d at 94 (reasoning that firearms of similar make and model are essentially fungible and the presence of a serial number does not impair the use or functioning of a firearm in any way). Secondly, the Supreme Court has identified two regulations that do implicate the Second Amendment: (1) a ban on possession of handguns in the home, *Heller,* 554 U.S. at 635; and (2) a prohibition on individuals carrying a handgun in public without a special showing of need, *Bruen*, 142 S. Ct. at 2156. A law requiring serial numbers on firearms is not analogous to these regulations and does not infringe on the right to keep and bear arms.

### C. Several Other District Courts Have Correctly Rejected the Reasoning of *Price*

As Merriman concedes, the United States District Court for the Northern District of Texas has found that §922(k) does not infringe an individual's right to possess a firearm. *Defendant's Motion to Dismiss at 2; See also United States v. Holton*, 3:21-CR-048-B; 2002 WL 16701935 (N.D. Texas, Nov. 3, 2022). In *Holton*, the Court rejected the analysis by the *Price* and held §922(k) constitutional under *Bruen* by deciding that "while §922(k) may restrict one manner in which individuals may keep and carry firearms, this restriction does not infringe on an individual's right

to bear arms for self-defense." *United States v. Holton*, 3:21-CR-048-B; 2002 WL 16701935 (N.D. Texas, Nov. 3, 2022).

The United States District Court for the Northern District of Indiana has also found that possession of guns with obliterated serial numbers proscribes conduct that is outside the scope of the Second Amendment. *United States v. Reyna*, No. 3:21-CR-41 RLM-MGG, 2022 WL 17714376, at *5 (N.D. Ind. Dec. 15, 2022). A serial number is a "nonfunctional characteristic of a gun." *Id*. at *5. "It also would make little sense to categorically protect a class of weapons bearing a certain characteristic wholly unrelated to their utility." *Id.* at *5 (quoting *United States v. Marzzarella* 614 F.3d 85, 94 (3d Cir. 2010)).

Similarly, the United States District Court in Maryland found that §922(k) "is not protected by the Second Amendment because it does not infringe on an individual's right to bear arms…" *United States v. Tita, et al,* No. CR RDB-21-0334, 2022 WL 17850250, at *7 (D. Md. Dec. 22, 2022). "Transporting or possessing a gun with an obliterated serial number is outside the Second Amendment's scope, §922(k) is therefore not unconstitutional on this basis." *Id. at *7.*

### III. SECTION 922(k) COINCIDES WITH HISTORICAL FIREARMS REGULATIONS

Even if Merriman's conduct were covered by the text of the Second Amendment, his challenge still fails because there have been proscriptions on the commercial sale and transport of firearms since the Founding Era. In *Heller*, the Supreme Court specifically provided that its ruling would not call into question regulations on the "commercial sale of firearms." *Heller*, 554 U.S. at 626. This example was included in a laundry list of "long-standing" prohibitions that were to be considered "presumptively valid" because of the historical recognition and vintage-and the Court

noted that its list was not exhaustive. *See id*. at 626-27. Section 922(k) is clearly a statute affecting, and relating to, the commercial sale of firearms. This should end the matter.

In fact, federal law imposes a wide range of lawful restrictions on commerce in firearms. For example, a person must obtain a federal license before engaging in the business of importing, manufacturing, or dealing in firearms. 18 U.S.C. § 922(a)(1)(A). A license-holder may not sell certain types of guns to a person who resides in a different state. *Id.* § 922(b)(3). A license-holder must also maintain records of its activities. *Id.* § 923(g). And under § 922(k), it is a crime to transport, ship, or receive a firearm with an obliterated serial number or to possess such a restricted firearm. In fact, Section 922(k) is just a part of a wide range of federal restrictions on commerce in firearms. Because these kind of regulations on the commercial sale of firearms are permissible, Merriman's motion should be denied.

But even delving deeper into historical sources under the second prong of the *Bruen* test, it is clear that Section 922(k) is permissible and consistent with long-standing firearm regulations going back to the Founding Era. Courts have recognized that "colonial governments substantially controlled the firearms trade." *Teixeira v. City of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017). Scholars have noted that many of the colonies enacted laws regarding the registration of firearms as part of legislative schemes regarding the sale, transfer, and taxation of firearms.

For example, "a 1652 New York law outlawed illegal trading of guns, gun powder, and lead by private individuals. . . . . A 1631 Virginia law required the recording not only of all new arrivals to the colony, but also 'of arms and munitions.' . . . In the 1800s, three southern states imposed taxes on personally held firearms." Robert Spitzer, *Gun Law History in the United States and the Second Amendment,* 80 Law & Contemp. Probs. 55, 76 (2017); *see also* Meg Penrose, *A Return to the States' Rights Model: Amending the Constitution's Most Controversial and*

*Misunderstood Provision*, 46 Conn. L. Rev. 1463, 1483 (2014) ("The Founders would likely challenge the notion that the government could not register weaponry or prohibit gun ownership. Unlike modern Americans, the founding generation endured mandatory gun registration as a basis for ensuring a functional militia, and routinely disarmed those considered threatening to the established social order."); *Minutes from a Convention of the Federalist Society: Civil Rights: The Heller Case*, 4 NYU J.L. & Liberty 293, 309 (2009) ("The Founders did have gun control. They had mandatory musters. Everyone with a gun had to show up and register their firearm...").

Similarly, in the early 17th century, Connecticut banned residents from selling firearms outside the colony. *Teixeira*, 873 F.3d at 685. Virginia likewise provided that people were at "liberty to sell arms and ammunition to any of his majesties loyal subjects *inhabiting this colony*." *Id.* at 685 n.18 (emphasis added). And other colonies "controlled the conditions of trade" in firearms. *Id.* at 685.

Further, and consistent with this Founding Era tradition, States continued to enact laws governing "the manufacture, sale, [and] transport" of guns and ammunition in the 18th and 19th centuries. *See* Spitzer article at 74. For example, in 1814, "Massachusetts required that all musket and pistol barrels manufactured in the state be first tested," and appointed a state inspector "to oversee or conduct the testing." *Id.* Likewise, in 1820, "New Hampshire created and appointed state gunpowder inspectors to examine every storage and manufacturing site." *Id.*

In sum, historical sources demonstrate a panoply of laws from the Founding Era which required firearm "registration," and which heavily regulated the sale and transfer of firearms—and particularly excluded sales outside the colony. These are historical analogues to the current serial number requirement, which is necessary to, and in aid of, modern legislative schemes regulating firearms in commerce. Nothing in Merriman's motion demonstrates otherwise. To the extent he

may claim that serial numbers are a recent invention without any historical analog, *see Defendant's Motion to Dismiss at 2*, this is a distinction without a difference. The Supreme Court itself made the point that the Second Amendment was not cabined only to firearms actually in existence in 1791; rather, the protections applied to guns in modern usage. *Heller,* 554 U.S. at 582. In this way, the modern serial number development is no different than providing coverage to modern handguns. Moreover, *Bruen* has made clear that the government need only identify a "representative historical analogue, not a historical twin." *Bruen*, 142 S. Ct. at 2133. As the above examples of gun registration and inspection statutes make clear, there are more than sufficient historical analogues for Section 922(k) to pass muster, particularly when it is understood that this regulation relates to the commercial sale of firearms which the Supreme Court has said is the kind of law that is presumptively valid.

The above sources are Founding Era laws that are close analogues to Section 922(k). Therefore, the requirement that unaltered serial numbers are required to transport, ship, receive, or possess firearms is a "condition" that does not violate the Second Amendment.

IV.   **AS MERRIMAN CONCEDED, HIS COMMERCE CLAUSE CLAIM IS FORECLOSED BY BINDING FIFTH CIRCUIT AUTHORITY**

Finally, Merriman argues that the Indictment should be dismissed because § 922(k) "exceeds Congress's powers under the Commerce Clause." *Defendant's Motion to Dismiss at 7*. Merriman concedes that this argument is foreclosed by circuit precedent. *See id*. at 8-10; *see also United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013); *United States v. Hicks*, 958 F.3d 399, 402 n.1 (5th Cir. 2020); *United States v. Nichols*, 2022 WL 5401942, *1 (5th Cir. Oct. 6, 2022). Consequently, Merriman's Commerce Clause claim should be denied.

## V. CONCLUSION

The Supreme Court is clear that the Second Amendment protects possession and use of firearms only for lawful purposes by "ordinary, law-abiding citizens." *Bruen*, 142 S.Ct. at 2122. The Constitution does not protect the conduct § 922(k) prohibits, namely possessing a firearm with an obliterated serial number. Moreover, even if such conduct was covered, the statute is consistent with the nation's historical tradition of firearm regulation. Therefore, the statute is constitutional and, Merriman's other claims are foreclosed by Fifth Circuit precedent, his motion to dismiss the Indictment should be denied.

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

By: *s/Gerard A. Cantu*
    Gerard A. Cantu
    Assistant United States Attorney
    11204 McPherson Road, Suite 100A
    Laredo, TX 78045
    Gerard.Cantu@usdoj.gov
    956-723-6523

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2023, I served a true and correct copy of Government's Response in Opposition to Defendant's Motion to Dismiss in the above-captioned case, via the court's e-noticing system and email to Defendant's counsel, Mr. Carlos Alaniz, Assistant Federal Public Defender.

By: *s/Gerard A. Cantu*
    Gerard A. Cantu
    Assistant United States Attorney
    11204 McPherson Road, Suite 100A
    Laredo, TX 78045
    Gerard.Cantu@usdoj.gov
    956-723-6523